# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SHENA WILDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:14-cv-01990 |
| ) | JUDGE CRENSHAW |
| SUMNER COUNTY BOARD OF ) | |
| EDUCATION ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Shena Wilder filed this lawsuit against the Sumner County Board of Education ("Board") alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101–12213 ("ADA"), the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103, and the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 ("FMLA"). Now before the Court are the Board's Motion for Summary Judgment (Doc. No. 14) and Motion to Strike Plaintiff's Statement of Additional Material Facts (Doc. No. 22). Plaintiff has abandoned her FMLA claim (Doc. No. 19 at 1), and for the reasons that follow the Court grants summary judgment dismissing her ADA and TDA claims.

## I.    UNDISPUTED MATERIAL FACTS[1]

The Board hired Wilder as a special-education teacher for the 2003–2004 school year. Subsequently, it rehired her for each successive school year through the 2015–2016 school year. She has always been assigned to Westmoreland High School ("WHS"), where her direct supervisor was principal, Rick Duffer.

---

[1] These facts are drawn directly from Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and are undisputed for purposes of Defendant's motion.

From 2003 through the end of the 2011–2012 school year, Wilder was a special-education "resource" teacher, performing as the lead teacher in her own classroom. Beginning in the 2011–2012 school year, Wilder became a "floating" resource teacher, working in multiple classrooms rather than a single classroom, but performing the same job duties and receiving the same salary and benefits. The "floating" assignment was due solely to WHS's lack of sufficient general-classroom space. (Doc. No. 20-2, Duffer Dep. at 16–20.)

On January 1, 2013, a new law took effect that required teachers to be "highly qualified" in their assigned course subject areas. Tenn. Code Ann. § 49-6-6006. To be deemed "highly qualified," a teacher must have the required number of credit hours in her area of expertise, have a degree in the subject, or pass a standardized test ("PRAXIS text") to show competency in the subject by January 1, 2014. (Doc. No. 14-6, Duffer Decl. at ¶ 3.)

Wilder was not, and never became, "highly qualified" in any subject area. To comply with the new law, Duffer transitioned her from the position of resource teacher to the position of "inclusion" teacher. (Id. at ¶ 5.) Her salary and benefits did not change, although she no longer had her own classroom and her job responsibilities changed.

Duffer "transitioned all special education teachers at [WHS] who were not 'Highly Qualified' or failed to become fully compliant with the new law within the specified timeframe to inclusion teaching roles." (Id. at ¶ 6.) He claims that he did not treat Wilder differently from the other special education teachers. (Id. at ¶ 7.) Wilder believes that "there were other special education teachers who were not [highly] qualified, yet they remained resource teachers." (Wilder Dep. at 100–01.)

In June 2013, Wilder applied for a transfer to one of three open positions at Westmoreland Middle School ("WMS"). WMS principal Danny Robinson, who made the hiring

decisions on each open position, interviewed Wilder for all three positions but did not hire her. Robinson made his decisions based on the candidates' resumes, teaching experience, and interview strength, and his own professional judgment. (Doc. No. 14-5, Robinson Decl. at ¶¶ 7–10.) Robinson had no knowledge that Wilder had a disability, and he never perceived her as having a disability. (Id. at ¶ 11.) Wilder remained under contract with the Board and assigned to teach at WHS, at the same rate of pay and benefits that she would have received if she had been selected for one of the positions at WMS.

A couple of months into the 2013–2014 school year, on October 17, 2013, Wilder submitted a request for extended medical leave through January 15, 2014. Her alleged medical issues were depression, anxiety, and stress. The Board approved her request for leave. When that leave period expired, Wilder requested additional medical leave from January 16, 2014 through June 1, 2014, constituting the entire spring semester. The Board again approved her request. Wilder has not returned to work since October 2013, although she remained employed by the Board at least through the 2015–2016 school year.[2]

Prior to submitting her request for medical leave, Wilder had never told the Board of her medical issues and never requested an accommodation for medical issues. Wilder also never told Duffer that she had a disability, and Duffer did not perceive Wilder as disabled. She did tell another special education teacher, Melissa Coles, in 2006 or 2007 that she suffered from depression and was taking medication for it, but that was a "one-time conversation." (Wilder Dep. at 181.)

Wilder complains that Duffer and Melissa Coles began creating a hostile work environment after Wilder expressed her view about a policy change implemented by Duffer. She

---

[2] The Board's Motion for Summary Judgment was filed in November 2015. As of that date, Plaintiff was still employed by the Board.

alleges that she was reassigned as a "floater" teacher, disciplined for something she did not do, and suffered other harassing conduct by Duffer and Coles. She alleges that the hostility became so egregious that she sought transfer to WMS.

Plaintiff filed an Equal Employment Opportunity Commission (EEOC) Charge of Discrimination against the Board, claiming that the Board subjected her to a hostile work environment, discriminated against her because of her age and disability, and retaliated against her for requesting medical leave. Plaintiff received a right-to-sue letter on July 21, 2014 and filed this action on October 17, 2014.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure allows either party to move for summary judgment on entire claims or defenses or parts of claims or defenses. Fed. R. Civ. P. 56(a). Summary judgment must be entered in favor of a movant if the "record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A), 56(a); Shadrick v. Hopkins Cnty., 805 F.3d 724, 736 (6th Cir. 2015).

### B. Analysis

Plaintiff has expressly conceded her FMLA claims in Count III of the Complaint. (Doc. No. 19 at 1.) Only her discrimination and hostile work environment claims under the ADA and TDA remain. (Doc. No. 1 at 3–6.) The Board is entitled to summary judgment and dismissal of these claims because: (1) the decision makers for the adverse actions about which she complains

had no knowledge of her disability; and (2) she failed to show that she was harassed because of her disability.

### 1. *Disability Discrimination under the ADA and the TDA*

To establish an ADA claim for disability discrimination using indirect evidence, a plaintiff must first establish a *prima facie* case of discrimination by showing that:

> (1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citations omitted). If the plaintiff establishes each element of her *prima facie* case, the burden shifts to the defendant to offer a legitimate explanation for its action. If the defendant does so, the burden then shifts back to the plaintiff to introduce evidence showing that the proffered explanation is pretextual. Id. A claim under the TDA that attacks the terms and conditions of employment, Tenn. Code Ann. § 8-50-103, is analyzed under similar standards as the ADA, except that the TDA does not require that employers make a reasonable accommodation. Cardenas-Meade v. Pfizer, Inc., 510 F. App'x 367, 369 ns.2 & 3 (6th Cir. 2013); Bennett v. Nissan N. Am., Inc., 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009).

Wilder claims that she was disabled by depression and anxiety and that she suffered three adverse employment actions: (1) her assignment to a "floating" position from a "resource" teacher position; (2) her assignment as an "inclusion" teacher; and (3) the denial of her request to transfer to any of the open positions at WMS in 2013. The Board argues that Wilder cannot establish a *prima facie* case of disability discrimination under the ADA or the TDA, because she cannot show that she is disabled, that the Board knew or should have known she was disabled,

that she suffered an adverse employment action, or that she was qualified for the positions she sought. The Court finds that summary judgment is warranted because Wilder has not shown that the Board knew or had any reason to know that she was disabled at the time it made the allegedly adverse employment decisions.

In her Response to the Motion for Summary Judgment, Wilder argues that there is a genuine issue of material fact as to whether the relevant decision makers "were aware of her disability." (Doc. No. 19 at 16.) In support, she points out that she told Melissa Coles in 2006 or 2007 that she was on medication for depression. However, merely telling a single co-worker, once, that she was taking anti-depressant medication would not give rise to a reasonable inference years later that Coles or anyone else regarded Wilder as disabled or give anyone reason to believe that Wilder had a condition that substantially limited a major life activity. See 42 U.S.C. § 12102(1) (defining disability as "a physical or mental impairment that substantially limits one or more major life activities," a "record of such an impairment," or "being regarded as having such an impairment").

Wilder also contends that Duffer knew or should have known she was disabled because he was aware that she had some medical condition that occasionally required her to take sick leave. (See Duffer Dep. at 49 (testifying that he was "aware" that Wilder had a medical condition "following several absences" in 2013). However, Wilder never told Duffer or anyone else that she was disabled or intimated that her condition interfered with her ability to work. She never provided work restrictions from a doctor and never requested accommodations. (Wilder Dep. 181–82; Doc. No. 14-5, Robinson Decl. at ¶ 11; Duffer Dep. at 49.) Even when she took leave, Wilder did not inform Duffer what medical conditions caused her to seek leave. (Duffer Dep. at 49.) Standing alone, the mere fact that Wilder occasionally took sick leave is not sufficient to

create an inference that she was disabled or regarded as disabled. Accord Leeds v. Potter, 249 F. App'x 442, 449 (6th Cir. 2007) (finding plaintiff failed to establish that employer knew he was disabled where direct supervisor who took adverse action was unaware plaintiff had a medical problem; plaintiff's most recent doctor's letter did not place him on medical restrictions; and he never requested an accommodation); Berry v. T–Mobile USA, Inc., 490 F.3d 1211, 1219 (10th Cir. 2007) (fact that employee applies for and receives FMLA leave does not mean the employer regarded the employee as disabled); Welsh v. Automatic Data Processing, Inc., 954 F. Supp. 2d 670, 681 (S.D. Ohio 2013) (finding the plaintiff did not establish a *prima facie* case of discrimination with respect to a hiring decision where the plaintiff admitted the person who made the hiring decision did not know of the plaintiff's alleged disability at the time he made the decision). Alexander v. Trilogy Health Servs., LLC, No. 1:11cv295, 2012 WL 5268701, at *12 (S.D. Ohio Oct. 23, 2012) ("What matters under the ADA . . . [is] whether the employee . . . provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." (internal quotations omitted)).

The Sixth Circuit has noted that it "may be rare that there is no genuine dispute whether an employer knew about an employee's disability" when it took the challenged adverse action, but where the disability is not "immediately obvious" and the employee never informed the employer of his disability, there could not be a genuine dispute as to whether the employer had knowledge of a disability. Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 932 (6th Cir. 1995). Such is the case here. In short, there is simply no evidence in the record creating a material factual dispute as to whether any person affiliated with the Board was aware of Wilder's alleged disability or had any reason to know that she was disabled at the time the challenged

7

employment decisions were made. Wilder therefore cannot establish a *prima facie* case of disability discrimination. On this basis alone, the Board is entitled to summary judgment on the plaintiff's ADA and TDA discrimination claims.

### 2. *Hostile Work Environment*

To establish a claim based on a hostile work environment under the ADA, Wilder must show that: (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the Board either knew or should have known about the harassment and failed to take corrective action. Trepka v. Bd. of Educ., 28 F. App'x 455, 461 (6th Cir. 2002). Because, as set forth above, no one at WHS knew Wilder was disabled, she cannot establish that the alleged harassment was "based on" her disability.

Wilder alleges harassment by Duffer and Coles, but she points to no evidence showing that either knew or had any reason to know that Wilder was disabled. Even if Coles knew Wilder suffered from depression in 2006 or 2007, there is no reason why Coles would have known Wilder was in fact disabled by that condition. See, e.g., Alderdice v. Am. Health Holding, Inc., 118 F. Supp. 2d 856, 864 (S.D. Ohio 2000) (to establish that depression was disabling condition, "Plaintiff must demonstrate that her depression substantially limited a major life activity"). As discussed above, Duffer's knowledge that Wilder had doctor's appointments does not establish knowledge that she had a disabling condition.

Moreover, Wilder's own allegations fail to suggest that the alleged harassment had any connection to her alleged disability. The Sixth Circuit has recognized a distinction between "harassment and discriminatory harassment." Trepka, 28 F. App'x at 461. "[A]n employee must demonstrate that the allegedly harassing conduct was motivated by a bias towards the

employee's protected class." Id. Without "evidence on the basis of which a reasonable jury could begin to determine that [the defendant] acted because of [the plaintiff's] disability rather than, for example, . . . because she just did not personally like [the plaintiff]," the plaintiff cannot establish violation of the ADA. Id. at 462. To paraphrase the Sixth Circuit: to avoid summary judgment, Wilder does not need to prove Duffer and Coles' motivation for treating her harshly, "but she should at least provide some evidence of discrimination." Id. She has not done so.

The Board is entitled to summary judgment on the hostile work environment claim as well.

An Order consistent with this Memorandum is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE